IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ELVIS J. GRUBBS,

      Plaintiff,

v.

THE SALVATION ARMY,

      Defendant.

Case No. 5:13-CV-04017-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiff Elvis Grubbs, who is pro se in this action, brings this employment discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. Plaintiff alleges that the Salvation Army gave him unfavorable work assignments and unlawfully terminated his employment as a thrift store clerk based on his race,[1] gender, and age. Plaintiff has filed a Motion for Summary Judgment (Doc. 24) under Fed. R. Civ. P. 56. The Salvation Army has filed its own Motion for Summary Judgment (Doc. 26). Both parties have filed responses (Docs. 30, 34). For the reasons explained below, the Court denies plaintiff's Motion for Summary Judgment and grants the Salvation Army's Motion for Summary Judgment.

**I.   Uncontroverted Facts**

Our local Rule 56.1 governs motions for summary judgment in this district. Rule 56.1 provides that "all material set forth in the statement of the movant shall be deemed admitted for

---

[1] In the administrative charge plaintiff filed with the Kansas Human Rights Commission, plaintiff asserted that he experienced discrimination based on his Native American "ancestry." Doc. 1-1. However, in his complaint, plaintiff claims he experienced discrimination based on his "race." Doc. 1. For consistency, the Court will refer to plaintiff's allegations as ones of racial discrimination. The distinction is not relevant to the Court's ruling because plaintiff has failed to make a prima facie case for either form of discrimination.

1

purposes of summary judgment unless specifically controverted by the statement of the opposing party." Plaintiff's motion, although stylized as a "Motion for Summary Judgment" merely recites portions of the case's procedural history, describes his attempts to contact opposing counsel and purports to charge opposing counsel with "identity theft." The Salvation Army did include a statement of material facts in its Motion for Summary Judgment, and it made a good faith effort to respond to plaintiff's statement of facts in its response. In his response, plaintiff contested only a few immaterial details of the Salvation Army's statement of facts.

Although plaintiff is proceeding pro se in this suit, "[t]he duty to admit or deny factual allegations is not too complex of a duty to require of a pro se litigant." *Beams v. Norton*, 335 F. Supp. 2d 1135, 1140 (D. Kan. 2004) *aff'd*, 141 F. App'x 769 (10th Cir. 2005). "[T]he failure of a plaintiff, pro se or otherwise, to admit or deny the veracity of facts set forth in a motion for summary judgment results in the facts being admitted." *Id*. Accordingly, to decide the current cross-motions for summary judgment, the Court relies on the facts set forth in the Salvation Army's statement of material facts.

### A. Parties

The Salvation Army is a non-profit organization, a church, and a worldwide religious and charitable ministry. Among its many operations, the Salvation Army operates thrift stores, including one located in Topeka, Kansas.

Plaintiff Elvis Grubbs is a fifty-five year old man who has some Native American ancestry. Plaintiff worked for the Salvation Army as a thrift store clerk from November 15, 2010 to January 14, 2012. At the start of his employment, the Salvation Army gave plaintiff the Employee Handbook for the Salvation Army's Central Territory. Plaintiff also singed a New Hire Orientation Checklist where, among other things, he agreed to abide by the Salvation

Army's policies and rules on absenteeism and professional conduct.[2] Plaintiff understood that he could lose his job if he failed to abide the standards outlined in the Handbook.

### B. Plaintiff's Bric-a-Brac Assignment

As a clerk, plaintiff's responsibilities at the thrift store included cleaning shelves, counters and tables, stocking merchandise on shelves and displays, and fulfilling other duties as assigned by his supervisors. At the beginning of his employment, plaintiff's manager, Stacy Anderson, informed him that he would receive training about how to sort and stock "bric-a-brac." Plaintiff received such training. "Bric-a-brac" refers to miscellaneous small items such as dishes, books, heaters, and fans people in the community have donated to the store. Stocking new bric-a-brac involves sorting products into grocery carts in the back of the store and placing the products on the store's shelves and display spaces. A male employee named Jacob Gomez was initially responsible for bric-a-brac. However, Ms. Anderson wanted to train plaintiff so, when needed, he could help sort bric-a-brac.

After the Salvation Army fired Mr. Gomez, Ms. Anderson took over the bric-a-brac duties. When Ms. Anderson became pregnant, plaintiff assumed some bric-a-brac responsibilities to help her. Other staff, including Sheena Davis, occasionally helped with the bric-a-brac. Eventually, the store hired a Caucasian man to sort the bric-a-brac, but he quit after two days. Plaintiff told his coworkers that he liked working with bric-a-brac.

Ms. Davis became an assistant manager and plaintiff's supervisor after the Salvation Army terminated the store's previous assistant manager for theft. Like plaintiff, Ms. Davis had

---

[2] The Salvation Army provided the Court a copy of the New Hire Orientation Checklist. Doc. 27-1 at 45-46. Plaintiff's signature appears on the last page of the document. *Id.* at 46. Plaintiff also testified at his deposition that he signed the New Hire Orientation Checklist. *Id.* at 45. Nevertheless, in his response, plaintiff disputes that he actually signed the New Hire Orientation Checklist. The Court concludes that the dispute about the signature is not material because plaintiff does not dispute that the Salvation Army gave him the document and he agreed to abide by its terms.

some Native American ancestry.  Under Ms. Davis' management, plaintiff spent about half of his time sorting bric-a-brac in the back room and the other half of his time stocking it on the store's shelves.  Plaintiff believed that Ms. Davis instructed other employees not to help him sort bric-a-brac in the back room.  Responding to plaintiff's request for help, Ms. Davis hired a new employee, a woman, to help him sort bric-a-brac and stock products on the shelves.[3]  But the new employee worked for just one week because she was not willing to take a drug test.  Plaintiff claims he does not "know what [Ms. Davis's problem] was," but he "figured" she made him handle the bric-a-brac without help from others because he was the only man of his age working at the store at the time.  Plaintiff also believes that a sexual harassment lawsuit filed against the Salvation Army by a former employee partially influenced Ms. Davis' decision to assign him sole responsibility for bric-a-brac.  Plaintiff, however, never elaborates on this suspicion.

### C.  Plaintiff's Absences and Car Problems

On June 27, 2011, plaintiff failed to report to work due to car problems and plaintiff's former supervisor, Ms. Anderson, issued him a warning for absenteeism.  Ms. Anderson issued plaintiff a second warning on July 29, 2011, this time for substandard work efforts and failure to carry out assigned tasks in a timely manner.  Plaintiff had failed to stock all of the items in his baskets, which remained in the baskets when he returned to work the following day.  On November 16, 2011 plaintiff was absent from work and failed to notify anybody at the store that he would be absent, commonly called a "no call/now show."  Plaintiff acknowledges that he could have received a written warning for this unexcused absence, but he did not receive one.

---

[3] In his response to the Salvation Army's Motion for Summary Judgment, plaintiff asserts that he asked Ms. Anderson—not Ms. Davis—to hire a new employee to help him with bric-a-brac. Because plaintiff does not contest that Ms. Davis knew about the request and hired an employee to assist plaintiff in response to his request, the identity of the person to whom plaintiff directed the request is not a material fact.

Plaintiff's supervisor, Ms. Davis, also reported that plaintiff frequently would leave the store for lunch and report back to the store late, though she never issued a "write-up" to plaintiff for returning late from lunch. Plaintiff acknowledges there were times when he came back from lunch five or ten minutes after his break should have ended.

In early January 2012, plaintiff was absent or tardy several times. Plaintiff left work early on January 2, 3, 6, 7, and 9 because he had a cold or was sick. On January 12, plaintiff called to report that he would arrive late because the transmission in his car had failed. Ms. Davis advised plaintiff he must provide a receipt for any repairs to his transmission to substantiate his excuse. Plaintiff concedes he responded by saying, "god damn it, Stacy tried this shit, and you can't do this to me." Plaintiff never provided a receipt for the transmission work. Next, plaintiff again failed to report to work the next day. When he returned on January 14, Ms. Davis issued plaintiff his third disciplinary warning for his repeated absences, substandard performance, or inappropriate behavior. As a result of these infractions, Ms. Davis suspended plaintiff and recommended that the Salvation Army's Finance and Human Resources Board (the "Board") terminate his employment.

### D. Plaintiff's Termination

On January 27, 2012, the Board approved Ms. Davis' recommendation to terminate plaintiff's employment. On July 12, plaintiff filed charges of discrimination with the Equal Opportunity Employment Commission and the Kansas' Human Rights Commission, alleging that the Salvation Army terminated him based on his gender, age, and ancestry. On several occasions, plaintiff met with an EEOC investigator and said he was aware of at least one non-Native American, a 33-year old woman, whom the Salvation Army terminated. Plaintiff also told the EEOC investigator that he was not aware of any Native Americans who had applied to the Salvation Army but were not hired. When the EEOC investigator asked plaintiff for any

other evidence that the Salvation Army discharged him based on his age, plaintiff told the investigator that it was her job to collect the evidence. On November 23, 2012, the EEOC issued a right to sue notice after it was unable to find evidence establishing unlawful discrimination.

## II.     Summary Judgment Standard

To prevail on a motion for summary judgment, a moving party must demonstrate that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When it applies this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)). "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)). To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those

dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

"In a pro se case, the pro se litigant's pleadings are to be liberally construed and are held to a less stringent standard." *Beams v. Norton*, 335 F. Supp. 2d 1135, 1139 (D. Kan. 2004) *aff'd*, 141 F. App'x 769 (10th Cir. 2005) (citing *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). "Nevertheless, the Court is not authorized to become the advocate for the pro se litigant. *Id.* "Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Id.* (citing *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.1991)). "Moreover, plaintiffs are not excused from compliance with fundamental rules of procedure because they are proceeding pro se." *Id.* (*Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994)). "Pro se litigants must follow rules of procedure, including local rules." *Id.* (citing *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992) (further citations omitted)).

The Court applies this same standard when presented with cross-motions for summary judgment. Each party bears the burden of establishing that no genuine issue of material fact exists and its entitlement to judgment as a matter of law. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Cross motions for summary judgment "are to

be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). But where the cross-motions overlap, the Court may address the legal arguments together. *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted). In this case, the legal issues and arguments presented by the two summary judgment motion are the same, so the Court addresses the legal issues together.

### III.    Age, Race, and Gender Discrimination

#### A.  Burden Shifting Analysis

Plaintiff has presented no direct evidence of age, race or gender discrimination. When a plaintiff fails to produce direct evidence of discrimination, the discrimination claims are evaluated under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 747 (10th Cir. 1999). The *McDonnell Douglas* framework applies to plaintiff's race, gender, and age discrimination claims. *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1216 (10th Cir.2002) (applying *McDonnell Douglas* to Title VII and the ADEA).

Under this analysis, the plaintiff must first establish a prima facie case of case of discrimination by a preponderance of evidence. *Id.* If the plaintiff sustains this burden, a rebuttable presumption of discrimination arises. *Id.* The defendant then bears the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant produces a nondiscriminatory basis for its decision, the burden of production shifts back to the plaintiff to show that the stated reason is either false or mere pretext. *Id.* However, "[t]he nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

### B. Prima Facie Case

To establish a prima facie case of discrimination under Title VII, plaintiff must establish that he: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) is otherwise qualified and satisfactorily performed his job duties; and (4) was treated less favorably than, or replaced by, others not in the protected class. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Similarly, to establish a prima facie case of age discrimination, the plaintiff must show that "(1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (citing *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)).

On each claim, plaintiff has established that he is a member of a protected class. *Fenton v. Pritchard Corp.*, 926 F. Supp. 1437, 1446-47 (D. Kan. 1996) (man who claimed he was discriminated against because he was male was a member of protected class, for purposes of Title VII); *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 154 F.3d 1117, 1119 n. 4 (9th Cir. 1998) (Native Americans are a well-recognized protected class under the various anti-discrimination statutes); *Myers v. Colgate-Palmolive Co.*, 102 F. Supp. 2d 1208, 1214 (D. Kan. 2000*) aff'd*, 26 F. App'x 855 (10th Cir. 2002) ("The protected class under the ADEA is individuals 'who are at least 40 years of age.'") (citing 29 U.S.C. § 631(a)). Plaintiff has also satisfied the second element because termination constitutes an adverse employment action. *O'Neal v. Ferguson Const. Co.,* 237 F.3d 1248, 1255 (10th Cir. 2001) (holding that termination constitutes an adverse employment action for the purposes of stating a prima facie case of discrimination under Title VII). However, the Court concludes that plaintiff has not satisfied the third and the fourth elements of the prima facie case for his discrimination claims.

### 1. Satisfactory Job Performance

Plaintiff fails on each of his discrimination theories because each claim requires him to produce sufficient evidence showing that he satisfactorily performed his job duties. The uncontroverted record shows that plaintiff received multiple written warnings about excessive absences, tardiness and substandard work product. Those written warnings advised plaintiff that the store managers would not tolerate continued absences or tardiness because they interfered with his ability to perform his job duties. *Livingston v. Sodexo, Inc.*, No. 11-4162-EFM, 2013 WL 1308292, at *8 (D. Kan. Mar. 27, 2013) *aff'd*, 562 F. App'x 695 (10th Cir. 2014) (plaintiff failed to establish a prima facie case of discrimination because history of written warnings for substandard performance demonstrated that she was not performing her job duties satisfactorily). Plaintiff acknowledges that when he failed to stock product on the shelves in a timely manner, products would not turn over and the store would lose sales as a result. The undisputed facts in the summary judgment record show that the frequency plaintiff's negative performance and absenteeism had occurred more frequently in the month preceding his termination.

In his response, plaintiff disputes a number of minor details about the Salvation Army's claims of deficient performance. For example, he claims that he returned late from lunch because he was picking up orders for other employees, that one of his no call/no show days was actually his day off, and that he could not produce a receipt for his car repairs because it was "under the service contract." However, "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 987 (10th Cir. 1996). *See also Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 747 (10th Cir. 1991) ("[p]laintiff's general dispute concerning job performance, in the absence of any other evidence of age discrimination, does not provide a sufficient basis for a jury to infer that [defendant] terminated plaintiff on the basis of age").

Even when the Court accepts plaintiff's assertions in his response as true, they fail to identify a triable issue of fact about the quality of plaintiff's overall job performance. This is especially important in light of plaintiff's failure to produce any evidence of discrimination. The Court finds, therefore, that plaintiff has failed to produce any evidence from which a jury could conclude he was performing his job duties adequately.

### 2. Unfavorable Treatment

Plaintiff has also failed to meet the burden imposed by the fourth element of his prima facie case—that the Salvation Army treated employees who are not in the same protected class as plaintiff more favorably, or that a person who is not a member of his protected class replaced him. Here, plaintiff makes just two allegations that conceivably could go to this requirement.

First, plaintiff claims he received unequal treatment when his car broke down. Plaintiff claims that his supervisor, Ms. Davis, gave a female employee a ride to work when she had car troubles or missed the bus, but did not pick up plaintiff when he experienced car troubles. Plaintiff concedes, however, that he never asked Ms. Davis to pick him up. Plaintiff also acknowledges that the female employee did not have a history of tardiness and absences. Second, plaintiff believes that Ms. Davis assigned plaintiff to bric-a-brac duties without help from any other employees because he was the only man of his age working at the store at the time. But the record shows that both male and female Caucasian employees worked the bric-a-brac. Younger employees did as well. For instance, a male employee named Jacob Gomez, a was Caucasian and 35 year-old, initially held the bric-a-brac responsibilities. After Mr. Gomez' termination, Ms. Anderson—a Caucasian woman—took over the bric-a-brac duties. When plaintiff asked for help sorting and stocking the bric-a-brac, Ms. Davis hired a younger, Caucasian woman to assist him. On occasion, even Ms. Davis helped sort and stock the bric-a-brac.

11

Thus, the summary judgment record fails to establish that the Salvation Army treated plaintiff less favorably than the Salvation Army treated employees who were younger, or a different gender, or members of a different race than plaintiff. To the contrary, plaintiff himself has recounted several events where the Salvation Army terminated Caucasian employees, three of whom were women, for violating its standards. The record also shows the Salvation Army terminated Jacob Gomez, Caucasian and younger than plaintiff, because of alcohol-related issues. The Salvation Army also terminated the Caucasian woman who once held Ms. Davis' position because she was stealing from the store. The woman Ms. Davis initially had hired to help plaintiff sort bric-a-brac was fired when she refused to take a drug test. Finally, plaintiff told the EEOC investigator that he knew of one other female employee—he believed she was about 33-years old—who the Salvation Army discharged. In sum, plaintiff has not produced any other evidence suggesting that the Salvation Army treated him less favorably than it treated other employees of different age, race, or gender.

### 3. Pretext

Even if plaintiff had established a prima facie case for his discrimination claims, the Court would still grant summary judgment against his claims. Plaintiff could not meet his ultimate burden, *i.e.*, to establish the Salvation Army's reasons for terminating plaintiff's employment were merely a pretext to conceal a discriminatory motive. The summary judgment record shows that plaintiff's absences increased in frequency and they affected his ability to perform his job duties adequately. The Salvation Army has supported its reason for terminating plaintiff with documented episodes of tardiness, absenteeism, and substandard work efforts over a period of nearly seven months. This evidence establishes a legitimate, non-discriminatory basis for terminating plaintiff's employment. *Nez v. BHP Navajo Coal Co.*, 227 F. App'x 731, 734 (10th Cir. 2007) (absenteeism is a legitimate, non-discriminatory reason for termination).

In contrast, plaintiff has simply failed to present any admissible evidence of pretext. Although plaintiff claims that Ms. Davis treated him unfavorably because he was an older man, he concedes that he only "figured" this was the case, and he "didn't really know what [Ms. Davis'] problem was." "[C]onclusory statements" and "[m]ere conjecture that [defendant's] explanation is a pretext for intentional discrimination [are] an insufficient basis [to deny] summary judgment." *Burney v. Cnty. Comm'rs of Cnty. of Shawnee, KS*, 413 F. Supp. 2d 1195, 1201-02 (D. Kan. 2006) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). "To avoid summary judgment, a party must produce '*specific* facts showing that there remains a genuine issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988) (quoting *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir. 1983) (emphasis and alterations in original) (further citations omitted)). Plaintiff has not produced any specific facts or evidence showing a genuine, triable issue of fact exists on the question of pretext.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motion for Summary Judgment (Doc. 24) is denied. Defendant's Motion for Summary Judgment (Doc. 26) is granted.

**IT IS SO ORDERED.**

**Dated this 9th day of December, 2014, at Topeka, Kansas**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**